UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE | ) |
| | ) Bankruptcy Case |
| DANIEL GARY WILLIAMS, | ) No. 11-61683-fra7 |
| | ) |
| Debtor. | ) MEMORANDUM OPINION |

Debtor Daniel Williams filed his Chapter 7 case on April 13, 2011. This matter comes before the Court on the United States Trustee's (UST) motion to dismiss under 11 USC § 707(b).[1] The Court conducted an evidentiary hearing on February 21, 2012, and thereafter took the motion under advisement. The dispositive issues in this matter involve the expense component of the so-called "means test" used in § 707(b)(2), as well as the requirement at § 707(b)(3) that the court, in determining whether the granting of relief under Chapter 7 would be an abuse, consider the totality of circumstances and whether the bankruptcy petition was filed in bad faith .

## DISCUSSION

Under § 707(b)(1), the court may dismiss a Chapter 7 case on the motion of specified parties, including the UST, if the debtors have primarily consumer debts and the court finds that granting relief would be an "abuse" of the provisions of Chapter 7. Section 707(b)(2), enacted under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005),

---

[1] Unless otherwise noted, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-1

dictates application of a formula, commonly known as the "means test" to determine if a rebuttable presumption of abuse has arisen. In applying the means test, the debtor's current monthly income (CMI) is calculated. CMI, generally speaking, is a debtor's averaged gross monthly income in the six full months prior to filing. See, § 101(10A). If CMI times 12 is above the median family income in the state where the debtor resides, §§ 101(39A) and 707(b)(7)(A), then certain standardized and actual expenses are deducted therefrom. § 707(b)(2)(A)(ii). If the difference multiplied by 60 is at least $11,725 (or at least $7,025 and at least 25% of the debtors' total nonpriority unsecured debt), the presumption arises. § 707(b)(2)(A)(i). A debtor may only rebut the presumption by a showing of "special circumstances" which justify additional expenses or adjustment to CMI "for which there is no reasonable alternative." § 707(b)(2)(B).

The Debtor's amended Form 22A indicates that the § 707(b)(2) presumption of abuse arises in this case, making him subject to the means test. After application of the means test, the amended Form 22A reported $281.45 of monthly disposable income, which exceeds the abuse threshold. Debtor also claimed, after the disposable income calculation, an additional $200 vehicle allowance, which he contended should be factored into the disposable income calculation. The UST made certain adjustments to the means test calculation, including the additional vehicle allowance, and determined that monthly disposable income is $436.30, which puts Debtor over the presumption of abuse threshold.

A. The Means Test

The applicable statute provides in pertinent part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service [IRS] for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case, if the spouse is not otherwise a dependent.

§ 707(b)(2)(A)(ii)(I) (emphasis added). As the emphasized language indicates, the statute dictates that the IRS's National and Local Standards (the Standards) be used in computing the means test. Debtor challenges the use of the Standards and argues that they are unconstitutional.

// // //

MEMORANDUM OPINION-2

The matter of the constitutionality of the Standards was litigated in another case in which Debtor's attorney was also the attorney for the debtors, and an opinion was entered in that case: *In re Wedblad*, 2012 WL 245967, slip op. E12-1 (Bankr. D. Or. Jan. 26, 2012). In that case, as in the present case, debtors had argued that the enabling statute, 26 U.S.C. § 7122(d)(2)(A), which enabled the IRS to develop the Standards, unconstitutionally delegated to the IRS the power to develop the Standards. Second, the debtors argued that the IRS had not followed the enabling statute's directive when it switched, beginning in 2008, from income-based National Standards to uniform National Standards regardless of income. Lastly, the debtors argued that the IRS failed to comply with the Administrative Procedures Act (APA) by not subjecting the Standards to "rule and comment" rulemaking. The court held in *Wedblad* that the development and use of the Standards met constitutional muster.

In the present case, the Debtor filed a supplemental memo arguing that the *Wedblad* decision was incorrectly decided with respect to its holding that the Standards are not legislative rules and thus are not subject to APA "rule and comment" rulemaking procedures. Specifically, Debtor argues that two of the cases cited by the court[2] do not discuss the APA and thus cannot be used as grounds for finding that the Standards are not rules. Those cases together, however, provide support for the court's holding that the Standards do not have the force of law, as would statutes or legislative rules, and are instead nonbinding guidelines made part of the Internal Revenue Manual. In creating the "means test" in chapter 7 of the Bankruptcy Code, Congress converted the nonbinding IRS Standards into a statute, by incorporation. The court stands by its ruling in *Wedblad* that the Standards used as part of the means test in chapter 7 are constitutional.

// // //

// // //

// // //

---

[2] *Fargo v. C.I.R.*, 447 F.3d 706, 713 (9th Cir. 2006) and *Marks v. Comm'r*, 947 F.2d 983, 986, n.1 (D.C. Cir. 1991).

MEMORANDUM OPINION-3

B. Bad Faith Filing Under § 707(b)(3)(A)

Prior to the bankruptcy, the Debtor lived in rented premises, paying $900 per month in rent. For a year or so prior to the bankruptcy, the Debtor had been in negotiations with the owner of the property to purchase it. He did not have the cash available for a down payment, and so entered into a contract whereby he would make substantially higher monthly payments towards purchase of the property over the first two years. After the purchase, the Debtor's monthly housing cost was $1,671.59. The sale of the house closed on the same day as the bankruptcy.

The court agrees with the U.S. Trustee's argument that this constitutes bad faith, and is by itself sufficient grounds to dismiss the case as an abuse. The Debtor has contrived to move nearly $800 per month in income out of the reach of his creditors, with no change in his living circumstances. The court does not accept Debtor's argument that he has a right to live where and how he pleases, and his argument that he was required to buy the property because the owner was elderly and might have died before a sale could be accomplished. By seeking bankruptcy relief at the same time that he increased his monthly living expense by nearly $800, Debtor did not put the interests of his creditors on an even standing with his own. The bankruptcy filing was made in bad faith. *See In re Boyce*, 446 B.R. 447, 452 (D. Or. 2011) (unnecessary expenditures that negatively impacted the interests of creditors grounds for dismissal as bad faith filing).

C. Totality of the Circumstances Under § 707(b)(3)(B)

The totality of the circumstances of Debtor's financial situation also demonstrates abuse and is additional grounds for dismissal. The U.S. Trustee presented credible evidence demonstrating that Debtor has sufficient disposable income to sustain a chapter 13 plan by which he could make a material effort to repay his creditors. This is particularly so after two years time when his monthly mortgage payment drops from $1,671.59 to $1,000, freeing up an additional nearly $700 in funds to pay to unsecured creditors.

// // //
// // //
// // //
// // //

MEMORANDUM OPINION-4

## CONCLUSION

For the reasons given above, the U.S. Trustee's motion to dismiss will be granted under §§ 707(b)(2) and (3). The case will be dismissed 14 days from the date of the entry of the order in this matter, unless Debtor chooses to convert the bankruptcy case prior to that time. An order to that effect will be entered by the court.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

MEMORANDUM OPINION-5