Ronald C. Becker, OSB #831519
Attorney for United States Trustee
Office of the U.S. Trustee
405 E. 8th Ave., Ste. 1100
Eugene, OR 97401-2706
Tel. (541) 465-6330

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Daniel Gary Williams,<br><br>                    Debtor. | Case No. 11-61683-fra7<br><br>U.S. TRUSTEE'S MEMORANDUM IN OPPOSITION TO DEBTOR'S MOTION FOR STAY PENDING APPEAL |

## I. SUMMARY OF ARGUMENT

In the Ninth Circuit, a party seeking a stay pending appeal must show irreparable harm is probable and either: a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor.  The Debtor has not satisfied those requisites. His motion for a stay of the Court's order dismissing this case pursuant to 11 U.S.C. § 707(b) should thus be denied.

## II. JURISDICTION AND FACTUAL HISTORY

A. <u>Jurisdiction and bankruptcy filing</u>.

1. The Court has jurisdiction under 28 U.S.C. § 1334(a) and (b), 28 U.S.C. §§ 151 and 157(a) and (b)(1), and Fed. R. Bankr. P. 8005 (requiring that motion for stay of bankruptcy

Page **1** of **12** – MEMORANDUM OPPOSING MOTION FOR STAY PENDING APPEAL

judge's order must ordinarily be presented in the first instance to bankruptcy judge). This is a core proceeding pursuant to § 157(b)(2).

2. On March 20, 2012, the Court entered an order granting the UST's § 707(b)(1) motion (Docket #12) to dismiss this case as an abuse of the provisions of Chapter 7 of the Bankruptcy Code. (Docket #46, hereinafter "§ 707(b) Order"). Specifically, the § 707(b) Order provided this case would be dismissed unless, within 14 days, the Debtor voluntarily converted his case to another Bankruptcy Code chapter.

3. The basis for the § 707(b) Order was set forth in the Court's March 19, 2012, Memorandum Opinion. (Docket #45.) The Memorandum Opinion rejected the Debtor's argument that the IRS Standards (incorporated by Congress in the § 707(b)(2) "means test") are unconstitutional; found that the § 707(b)(2)(A) presumption of abuse arose in this case and was not rebutted; and also found that case dismissal was appropriate under § 707(b)(3)(A) and (B), because the Debtor filed his Chapter 7 petition in bad faith, and the totality of the circumstances of his financial situation demonstrated Chapter 7 abuse.

4. On March 29, 2012, the Debtor filed a Notice of Appeal of the § 707(b) Order. (Docket #51.) That same date, he filed a Statement of Issues to be Presented in his appeal. (Docket #54.) Therein, he stated the issues as "whether the Means Test of 11 U.S.C. § 707(b)(2) is inapplicable since the National and Local Standards were not adopted as required by the APA, whether the acquisition of a secured debt to purchase a home pre-petition renders the filing of this case to be in bad faith under § 707(b)(3)(A) and whether the future possibility of funds for a Chapter 13 Plan makes this filing to be an abuse under § 707(b)(3)(B)."[1]

---

[1] On April 10, 2012, the UST objected to referral of the appeal to the Bankruptcy Appellate Panel. (Docket #63.) The appeal has since been docketed by the United States District Court for the District of Oregon, as Case 6:12-cv-00671-HO. (Docket #70.)

Page **2** of **12** – MEMORANDUM OPPOSING MOTION FOR STAY PENDING APPEAL

5.  Also on March 29, 2012, the Debtor filed a Motion to Stay Order of Dismissal. (Docket #53, hereinafter "Stay Motion".)  Therein, he stated only that he "move[d] the Court for an Order pursuant to 28 U.S.C. § 158(d)(2)(D) staying the dismissal of this matter pending conclusion of the appeal filed herein."  On March 30, 2012, an order temporarily granting the Stay Motion was entered, pending an April 19, 2012, hearing on that motion.  (Docket #56.)

6.  In the April 19, 2012, hearing, the UST voiced opposition to the Debtor's Stay Motion.  The Court then requested that the parties to brief their positions regarding that motion within 21 days.  Meanwhile, pending a determination of the Stay Motion, the temporary stay granted by the Court's March 30, 2012, order remains in effect.

### III. LEGAL ANALYSIS

A. <u>A stay requires probability of irreparable harm and either a strong likelihood of success on the merits, and that the public interest does not weigh heavily against a stay; or a substantial case on the merits, and tipping of hardships sharply in the applicant's favor.</u>

Pursuant to 28 U.S.C. § 158(d)(2)(D), appeal of a bankruptcy court order does not stay any proceeding of the court, unless the court issues a stay pending the appeal. Such stays are governed by Fed. R. Bankr. P. 8005, which provides, in pertinent part:

> A motion for a stay of the judgment, order or decree of a bankruptcy judge …
> pending appeal must ordinarily be presented in the bankruptcy judge in the first
> instance.  Notwithstanding Rule 7062 but subject to the power of the district court
> and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge
> may suspend or order the continuation of other proceedings in the case under the
> Code or make any other appropriate order during the pendency of the appeal on
> such terms as will protect the right of all parties in interest.

The Rule 8005 reference to Fed. R. Bankr. P. 7062 (governing stays to enforce adversary proceeding judgments) is inapplicable in contested matters, which include § 707(b)(1) motions.

Fed. R. Bankr. P. 7001 (defining adversary proceedings; Fed. R. Bankr. P. 9014(c) (designating adversary proceeding rules applicable in contested matters, but not including Rule 7062.)

A stay pending appeal is not a matter of right, even if irreparable injury might otherwise result; rather, it is "'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.'" Nken v. Holder, 556 U.S. 418, 433 (2009) (quoting Virginia R. Co. v. United States, 272 U.S. 658, 672 (1926)) (additional citation omitted). A party seeking a stay bears the burden of showing the circumstances justify an exercise of such discretion. Id. at 434 (citing, e.g., Clinton v. Jones, 520 U.S. 681, 708 (1997)) (additional citation omitted).

Discretion in deciding stay request is not ungoverned: motions to a court's discretion are motions to its judgment, which must be guided by sound legal principles. Id. (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005)) (additional citation omitted). Legal principles governing stays "have been distilled into consideration of four factors": 1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and 4) where the public interest lies. Id. (citing Hilton v. Branskill, 481 U.S. 770, 776 (1987)).

In Nken, the Supreme Court reiterated "[t]he first two factors of the traditional standard are the most crtical. It is not enough that the chance of success on the merits be 'better than negligible.'" Id. (citing Sofinet v. INS, 188 F.2d 703, 707 [(7th Cir. 1999)] (internal quotation marks omitted in original)). "By the same token, simply showing some 'possibility of irreparable injury,' Abassi v. INS, 143 F.3d 513, 514 [(9th Cir. 1998)], fails to satisfy the second factor. … [T]he 'possibility' standard is too lenient." Id. at 434-35 (citing Winter v. Natural

Resources Defense Council, Inc., 555 U.S. 7, (2008) (holding Ninth Circuit "possibility" standard, for preliminary injunctions, "too lenient")).[2] "Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." Id. at 435 (citation omitted); Leiva-Perez v. Holder, 640 F.3d 962, 970 (9th Cir. 2011).

While Nken raised the minimum permissible showing of irreparable harm to justify a stay, "it did not disturb the overall manner in which courts balance the various stay factors once they are established." Leiva-Perez, 640 F.3d at 965. "Nken held that if the petitioner has not made a certain threshold showing of irreparable harm … then a stay must not issue, regardless of the petitioner's proof regarding the other stay factors." Id. (citing Nken). "By the same token, even certainty of irreparable harm has never *entitled* one to a stay." Id. (italics in original). "In short, a proper showing regarding irreparable harm was, and remains, a necessary but not sufficient condition for the exercise of judicial discretion to issue a stay." Id.

In Leiva-Perez, the Ninth Circuit Court of Appeals reasoned that "[a]lthough there are important differences between a preliminary injunction and a stay pending review, discussed at length in Nken, see [556 U.S. at 428-431], we do not believe they would support a balancing approach for preliminary injunctions but not stays." Id. at 966. "If anything, a flexible approach is even *more* appropriate in the stay context." Id. (italics in original). Because stays pending appeal are typically less coercive and disruptive than injunctions, the court concluded that "the general balancing approach used in Abassi remains in place," with due consideration given to how Nken affects the individual elements to be balanced. Id.

---

[2] In Nken, the Supreme Court explained "[t]here is substantial overlap between" factors governing stays and preliminary injunctions, "not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." 556 U.S. at 434.

Regarding the first factor – a strong showing of likely success on the merits – the Ninth Circuit deemed it clear "that to justify a stay, petitioners need not demonstrate that it is more likely than not that they will win on the merits." Id. (citing Citigroup Global Mkts., Inc. v VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 37 (2d Cir. 2010) (Nken did not suggest factor requires a showing that movant is more likely than not to succeed on merits)). "Insofar as we have long required more on the 'likelihood of success' factor than what Nken rejected, we do not believe Nken changed that aspect of the Abassi formulation." Id. at 967 (citing Abassi, 143 F.3d at 514) (requiring a stay petitioner to show either "a probability of success on the merits" or that "serious legal questions are raised," depending on the strength of the petitioner's showing on the other stay factors)). "Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." Id. at 968.

In Leiva-Perez, the Ninth Circuit next noted that "[w]hile Nken did not affect Abassi's likelihood of success prong, it did overrule that part of Abassi that permitted a stay to issue upon" simply showing some possibility of irreparable injury. Id. (citation omitted). Also, while "Nken did not say what ought to replace Abassi's 'possibility' standard," the Ninth Circuit observed that the Supreme Court had "quoted Winter" and that "Winter, in turn, was clear in holding that 'plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction.'" Id. (quoting Winter, 129 S. Ct. at 375) (brackets and italics in original). The court thus "read Nken's reference to Winter in this context as indicating" that *probability* of irreparable harm is necessary to satisfy the second factor of the stay inquiry. Id.

Turning to the third and fourth factors – assessing a stay's impact on the opposing party, and the public interest, which merge where the government is the opposing party – the Ninth Circuit explained that <u>Nken</u> emphasized that particulars of each individual case must be considered, rather than simply assuming that the balance of hardships will ordinarily weigh heavily in the applicant's favor. <u>Id.</u> at 970. The court also emphasized that while the party seeking the stay has the ultimate burden, "the government is obliged to bring circumstances concerning the public interest to the attention of the court. <u>Nken's</u> admonition that we cannot base stay decisions on assumptions and 'blithe assertion[s]' … applies with equal force to the government's contentions in opposing stay requests." <u>Id.</u> (brackets in original, internal citation omitted). The Ninth Circuit then summed up its interpretation of <u>Nken's</u> effect by holding that a party seeking a stay "must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." <u>Id.</u> (citing <u>Abassi</u>, 143 F.3d at 514).

    B. <u>It does not appear that the Debtor can establish either a strong likelihood of success on the merits, or a substantial case on the merits.</u>

Here, the Stay Motion did not state *any* basis for stay of the § 707(b) Order. The Stay Motion is thus insufficient to warrant the relief it requested. <u>See</u> <u>Abassi</u>, 143 F.3d at 514 (perfunctory request for deportation stay pending review was "wholly insufficient" to meet stay requirements, because merits of petition for review were not discussed and no potential hardships were identified). The Debtor's supplemental brief (Doc. # 72, filed May 8, 2012) asserts a probability of success on the merits. The Debtor's argument, however, appears highly unlikely to satisfy the first factor of the stay analysis as discussed in <u>Nken</u> and <u>Leiva-Perez</u>.

In the latter case, the Ninth Circuit considered in detail what effect Nken had on the first factor, and concluded that "[r]egardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case on the merits." Leiva-Perez, 650 F.3d at 968.  The court further explained "[a] more stringent requirement would either, in essence, put every case in which a stay is requested on an expedited schedule, with the parties required to brief the merits of the case in depth for stay purposes," or would require courts to attempt "to predict with accuracy the resolution of often-thorny legal issues without adequate briefing and argument." Id. at 967.  "Such pre-adjudication would defeat the purpose of a stay, which is to give the reviewing court the time to 'act responsibly,' rather than doling out 'justice on the fly.'" Id. (quoting Nken, 129 S.Ct at 1757).  It thus is not appropriate, at this juncture, to fully brief the merits of the Debtor's appeal.

Nonetheless, it bears noting that this Court's Memorandum Opinion found bases for dismissal of the Debtor's case as an abuse of Chapter 7 under *all three* mechanisms established by the 2005 amendments of § 707(b): 1) an unrebutted presumption of abuse (§ 707(b)(2)); 2) a bad-faith Chapter 7 filing (§ 707(b)(3)(A)); and 3) the totality of the circumstances of the Debtor's financial situation (§ 707(b)(3)(B)).  The Debtor's Statement of Issues suggests that, on appeal, he intends to simply rehash his prior positions.  No authority exists, however, for his arguments asserting the IRS Standards, incorporated in § 707(b)(2), are unconstitutional.  Indeed, in two separate cases – the instant one, and In re Wedblad, 2012 WL 245967 (Bankr. D.Or. Jan. 26, 2012) – this Court held otherwise; and the UST is unable to identify a decision in which *any* other court has remotely supported the Debtor's § 707(b)(2) unconstitutionality arguments.

As for this Court's finding that the Debtor filed his petition in bad faith – by failing to put unsecured creditors' interests on even par with his own – that comports with In re Boyce, 446

B.R. 447 (D.Or. 2011), and other "bad faith" cases cited and discussed in prior briefs supporting the UST's § 707(b)(1) motion. Likewise, it is well-established, as also discussed in the UST's prior briefs, that a debtor's ability to pay creditors evidences Chapter 7 abuse under the totality of the circumstances. Consequently, even in the unlikely event that the Debtor were to prevail in his § 707(b)(2) constitutional challenge, he would not prevail in his appeal unless he could also persuade the District Court that this Court's separate § 707(b)(3)(A) and (B) determinations were also incorrect. See, e.g., In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009) (even if there is not a presumption of abuse, or if the presumption is rebutted, court may still dismiss petition if debtor filed it in bad faith, or if totality of the circumstances demonstrates Chapter 7 abuse).

In sum, that the Debtor is displeased with the § 707(b) Order, without some compelling basis to suggest it may well have been wrongly-decided, is insufficient to establish either a strong likelihood of success on the merits, or a substantial case on the merits – one or the other of which the Ninth Circuit has explained is necessary, post-Nken, to warrant a stay pending appeal.

C. <u>Even were the Debtor deemed to have a strong likelihood of success on the merits, or a substantial case on the merits, he has not shown probability of irreparable harm.</u>

In the April 19, 2012, hearing, and in his supplemental brief, Debtor's counsel stated that, prepetition, the Debtor was at risk of losing his driver's license, due to a traffic accident judgment.[3] The § 707(b) record showed the Debtor had been a route sales driver for, essentially, his entire adult employment history. It thus does arguably follow that loss of his driver's license could impose an employment hardship. However, even assuming the Debtor would, if the § 707(b) Order were not stayed, have his license suspended, he has yet to show 1) that he would, as a result, definitively lose his job (and could not obtain another); or 2) that there would not be

---

[3] See Progressive Casualty Insurance Company claim on the Debtor's Schedule F; and corresponding judgment disclosure under Statement of Financial Affairs item #4. (Docket #1).

Page **9** of **12** – MEMORANDUM OPPOSING MOTION FOR STAY PENDING APPEAL

avenues available to reinstate his license and/or otherwise mitigate hardship imposed by its loss. By definition, if a license suspension were not *permanent*, resulting harm would not be "irreparable." In particular, the Debtor has not shown (or addressed) whether he could qualify for a hardship driver's license under O.R.S. 807.240 even if his license is suspended.[4]

In addition, any allegation of *probability* of irreparable harm – the standard imposed by Nken's overruling of Abassi's "possibility" standard – to the Debtor must fail due to a glaring fact: the § 707(b) Order offered him a stay alternative. That order delayed case dismissal for 14 days, to allow the Debtor the opportunity to convert it to another chapter. Per the March 30, 2012, temporary stay – still in effect, pending resolution of the Stay Motion – that opportunity remains. Under 11 U.S.C. § 109 guidelines, the Debtor is eligible to be a debtor under Chapter 11 or Chapter 13. Consequently, discretionary judicial stay of the § 707(b) order, pending appeal, simply is not necessary to avoid suspension of the Debtor's driver's license, because conversion would continue the 11 U.S.C. § 362 automatic stay.

Debtor, however, alleges in his supplemental brief that, if he converts to chapter 13, he will be irreparably harmed because he will have to make payments under a plan and that, once those payments are disbursed to creditors, he could not retrieve them. At this point, it is unknown what, precisely, a chapter 13 plan would provide, whether there will be any objections filed, whether or when it will be confirmed, and whether any of those things will happen before

---

[4] O.R.S. 807.240 appears to provide for the issuance of a license that would allow the Debtor to drive for employment purposes unless he is required to drive a "commercial motor vehicle" which is defined, at ORS. 801.208 as: "a motor vehicle or combination of motor vehicles and vehicles that: (a) Has a gross combination weight rating of 26,001 pounds or more, inclusive of a towed unit or a combination of towed units, with a gross vehicle weight rating of more than 10,000 pounds; (b) Has a gross vehicle weight rating of 26,001 pounds or more; (c) Is designed to transport 16 or more persons, including the driver; or (d) Is of any size and is used in the transportation of hazardous materials."

this appeal is decided. His contention that he will be irreparably harmed by converting to chapter 13 is, therefore, too speculative to be a factor at this juncture.[5]

In sum, the Debtor has not shown that he will be irreparably harmed absent a discretionary judicial stay of the § 707(b) order, pending appeal.

> D. The public interest in not allowing abusive cases to continue in Chapter 7 weighs heavily against granting the Stay Motion.

As discussed above, where the government is the opposing party, stay inquiry factors three and four – potential damage to the opposing party, and the public interest – merge. Nken, 556 U.S. at 435; Leiva-Perez, 640 F.3d at 970. "Congress enacted the Bankruptcy Abuse Prevention and Consumer Prevention Act of 2005 … to correct perceived abuses of the bankruptcy system." Milavetz, Gallop & Milavetz, P.A. v. United States, 559 U.S. – , – , 130 S.Ct. 1324, 1329 (2010). In particular, Congress adopted the § 707(b)(2) means test "to help ensure that debtors who *can* pay creditors *do* pay them." Ransom v. FIA Card Services, NA, 131 S. Ct. 716, 721 (2011) (emphasis in original) (citations omitted). The public interest, as codified in § 707(b) and as explained by the Supreme Court, thus lies in ensuring that cases deemed abusive of Chapter 7, under mechanisms Congress provided to determine such abuse, do *not* continue under that Bankruptcy Code chapter.

That in mind, because 1) the Debtor has a readily available alternative to a discretionary stay of the § 707(b) Order (thereby negating any probability of irreparable harm, were the order not stayed); because 2) his case was found abusive under *all three § 707(b) mechanisms* for

---

[5] Moreover, subject to the Court's approval (and, of course, potential objections by interested parties), the Debtor could propose, in his chapter 13 plan, that the chapter 13 trustee hold disbursements to creditors until this appeal is decided. The plan process could, therefore, proceed up to the plan payment disbursement point. That would avoid delay in disbursements to creditors when the appeal is decided. If the appeal is decided against the Debtor, the trustee would be in a position to disburse funds to creditors right away. If the Debtor prevails on appeal, he could seek dismissal of the chapter 13 and obtain a refund of the payments made.

Page **11** of **12** – MEMORANDUM OPPOSING MOTION FOR STAY PENDING APPEAL

determining Chapter 7 abuse; and because 3) the public interest weighs heavily against allowing abusive cases to continue under Chapter 7, the Debtor cannot – even were he to satisfy other stay inquiry factors – establish that the public interest does not weigh heavily against a stay, or that the balance of hardships tips sharply in his favor.  This case has been pending for over one year.  The Debtor's creditors should be allowed to pursue their remedies.  The Stay Motion should thus be denied.

## IV. CONCLUSION

Based on the foregoing facts, authority and discussion, the UST respectfully requests that an order be entered denying the Debtor's Stay Motion.

Date: May 10 , 2012.

    Respectfully submitted,

    ROBERT D. MILLER, Jr.
    United States Trustee


    /s/Ronald C. Becker
    RONALD C. BECKER, OSB #831519
    Attorney for United States Trustee

**CERTIFICATE OF SERVICE**

I, Ronald C. Becker, hereby certify as follows:

1.      On May 10, 2012, the attached document was served on the persons shown below by depositing a true copy thereof, in a sealed envelope with First-Class postage prepaid and addressed as shown below, in the U.S. Mail, at Eugene, Oregon.

   NONE.

2.      Based on the Bankruptcy Court's Electronic Case Filing records, the following person(s) should be served electronically when the attached document is filed with the Court:

   Stephen P Arnot     arnotlaw@sbcglobal.net,
   sparnot@ecf.epiqsystems.com;may.flores@sbcglobal.net
   MICHAEL SPENCER     mikebky@mspencer.com
   US Trustee, Eugene     USTPRegion18.EG.ECF@usdoj.gov

   /s/Ronald C. Becker
   RONALD C. BECKER, OSB # 831519
   Attorney for the United States Trustee

**Page 1 of 1** – Certificate of Service